## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| AMEDISYS HOLDING, LLC | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. _____** |
| **v.** | ) | |
| | ) | |
| INTERIM HEALTHCARE OF | ) | |
| ATLANTA, INC., DENISE | ) | |
| CATHEY, BRENDA HOGAN, | ) | |
| and JENNIFER MACK | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## **COMPLAINT**

Amedisys Holding, LLC ("Amedisys" or "Plaintiff"), by and through its undersigned counsel, hereby makes and files this Complaint and request for temporary restraining order, and preliminary and permanent injunctive relief, and monetary damages against defendants Denise Cathey, Brenda Hogan, and Jennifer Mack (the "Individual Defendants"), as well as the Individual Defendants' current employer Interim Healthcare of Atlanta, Inc. ("Interim") (collectively with the "Individual Defendants," the "Defendants"), and in support thereof respectfully shows the Court as follows:

## NATURE OF THE ACTION

### 1.

This is an action for violation of the federal Stored Communications Act (the "SCA"), 18 U.S.C. §§ 2701 et seq.; the federal Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030; misappropriation of the Plaintiff's trade secrets under the Georgia Trade Secrets Act (the "TSA"), O.C.G.A. §§ 10-1-760, et seq. and common law; computer theft and computer invasion of privacy under the Georgia Computer Systems Protection Act (the "CSPA"), O.C.G.A § 16-9-93; breach of fiduciary duty and duty of loyalty; tortious interference with business relations; trover/conversion; and breach of contract.  The Plaintiff seeks equitable relief, including a temporary restraining order, preliminary and permanent injunction, and damages.

### 2.

This action arises out of the misappropriation, conversion and use of highly sensitive and highly confidential proprietary and trade secret information belonging to the Plaintiff, including patient health information.  The misappropriated information is kept confidential by the Plaintiff and access to said information is restricted.  Upon information and belief, Defendants wrongfully obtained and converted said information via, inter alia, unauthorized access to the

Plaintiff's protected computer systems and network, all in violation of the SCA, the CFAA, the TSA, the CSPA, Defendants' contractual duties, and Georgia common law.

## THE PARTIES

3.

Amedisys is a limited liability company organized and existing under the laws of the State of Louisiana, having its principal place of business at 5959 South Sherwood Forest Blvd., Baton Rouge, Louisiana 70816.

4.

Interim is a home health care provider that maintains its principal place of business at 6000 Lake Forrest Drive, Suite 500, Atlanta, Georgia 30328.  Interim can be served by serving its principal place of business at 6000 Lake Forrest Drive, Suite 500, Atlanta, Georgia 30328.

5.

Upon information and belief, Defendant Cathey resides at 5164 Laurel Bridge Court, Smyrna, Georgia 30082.  Defendant Cathey can be served by serving her residence at 5164 Laurel Bridge Court, Smyrna, Georgia 30082.

6.

Upon information and belief, Defendant Hogan resides at 658 Benson Hurst Drive, Mableton, Georgia 30126.  Defendant Hogan can be served by serving her residence at 658 Benson Hurst Drive, Mableton, Georgia 30126.

7.

Upon information and belief, Defendant Mack resides at 1628 Princeton West Trail, Marietta, Georgia 30062.  Defendant Mack can be served by serving her residence at 1628 Princeton West Trail, Marietta, Georgia 30062.

## JURISDICTION AND VENUE

8.

The Court has jurisdiction over the subject matter of Counts One  through Two of this action pursuant to 28 U.S.C. § 1331 because this case arises under the SCA and the CFAA.  The Court also has jurisdiction over this matter under 28 U.S.C. 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. Defendants are subject to the jurisdiction of this Court because this action arises out of tortious and injurious activity that Defendants have committed in and throughout this Judicial District; tortious and injurious activity that Defendants have directed and purposefully committed against the Plaintiff, which has caused

4

injury to the Plaintiff, in and throughout this Judicial District; and other activities that have occurred and are occurring, in and throughout this Judicial District.

9.

Venue is proper in this Court under 28 U.S.C. § 1391(a) because it is the district in which a substantial part of the events giving rise to the claim occurred and in which the property that is the subject of the action is located.

## FACTS GIVING RISE TO THIS ACTION

### The Plaintiff's Confidential, Proprietary And Trade Secret Information

10.

Amedisys is a health care provider that delivers home health care and hospice services to more than 35,000 individual patients and their families throughout the country.

11.

The Plaintiff relies heavily on its employees' relationships with hospitals and their patients to maintain business relations, receive new referrals for patients, and generate revenue.  The Plaintiff's proprietary sales strategies, referral logs, research and development results, and business plans are closely guarded corporate secrets that enable the Plaintiff to maintain a highly competitive position among corporations providing home health care and/or hospice services.

12.

Amedisys derives significant economic value from its confidential, proprietary and trade secret information, and has invested significant time and resources in establishing, implementing, and ensuring compliance with procedures for maintaining the confidentiality of its proprietary and trade secret information. Such procedures include confidentiality, disciplinary, and duty of loyalty provisions in the Plaintiff's employee handbooks signed by the Individual Defendants; non-disclosure and non-solicitation covenants signed by the Individual Defendants; "Standards of Conduct for Compliance" signed by the Individual Defendants; a signed confidentiality agreement prohibiting the Individual Defendants' disclosure of the protected health information of the Plaintiff's patients; and a "Use of Electronic Communications & Computers Policy" that required all users of the Plaintiff's computers to obey federal and state laws regarding divulging confidential records.

13.

The Non-Solicitation Agreement signed by the Individual Defendants states, in part, that the Individual Defendants agree to return to Amedisys all confidential information owned by Amedisys at the termination of their employment.

14.

The Plaintiff's confidentiality and information protection policies require employees to take affirmative steps to protect confidential information, including, without limitation, restricting employees' access to proprietary information based on that employee's position and login credentials with the Plaintiff.

### The Plaintiff's Computer Networks
### And Electronic Communications Systems

15.

Amedisys maintains a proprietary computer network, which incorporates a proprietary electronic communications system, that Amedisys and its employees use to communicate, share information and store information.  The Plaintiff's computer network and electronic communications system is secure and protected against unauthorized use, including, without limitation, by requiring the use of company-provided login IDs and secure passwords to access the system, by using two firewalls that are co-managed by the Plaintiff and an independent company, by limiting employees' access to information based on their login credentials and job responsibilities, by setting permissions to prevent unauthorized employees from gaining access to sensitive data, by using a separate secure online environment to view confidential messages automatically flagged for certain keywords and

phrases, and by protecting against viruses and other unauthorized infiltration and access.

## The Protected Information

16.

The Plaintiff's confidential, proprietary and/or trade secret information includes certain information compiled by the Plaintiff and by third parties exclusively for the Plaintiff's use, and for which the Plaintiff paid substantial fees (the "Protected Information").

17.

Said Protected Information provided by a third party for a fee includes, without limitation, competitive data regarding the home health care referral statistics for doctors in the territories where Defendants operate, analyses of the home health care referrals of the Plaintiff's competitors, tracking data regarding home health care preferences, and other information (the "Workbook").

18.

The Workbook contains detailed market information regarding Medicare and home health care referral rates for doctors within the specific geographic locations in which Plaintiff operates.

19.

The Workbook is used only by the Account Executives who work within those geographic areas.

20.

The Workbook lists the referral statistics for each doctor within a territory according to the doctor's specialty.  The Workbook ranks each doctor based on the number of Medicare and home health care referrals compared to other physicians within that territory and medical specialty.

21.

The Protected Information in each Workbook is provided each quarter to the Plaintiff by a third party for a substantial fee.  The Plaintiff's Account Executives have received a new Workbook quarterly since the first quarter of 2009.

22.

The Protected Information contained in the Workbook is the most recent data available to the Plaintiff regarding territory-specific Medicare and home health care referral trends, market share, and home health care purchases and preferences, and would be of enormous economic value to the Plaintiff's competitors.

23.

Those Account Executives and other authorized employees who use the Workbook are required to  maintain the Workbook in limited-access, password-protected databases on the Plaintiff's protected computer network.

24.

After the Workbook is created and sent to the Account Executives, access to such Protected Information is restricted only to those Account Executives and employees authorized by the Plaintiff to access the information.

25.

Each page of the Workbook is marked with the following designation: "All information contained herein is the confidential property of Amedisys.  Recipients of this binder shall not disclose any of the information contained herein to any third party."

26.

The Workbook is subject to confidentiality provisions in the Plaintiff's contracts with the third party information providers.

27.

The Protected Information in the Workbook is confidential and proprietary, and would be of enormous economic value to the Plaintiff's competitors.

28.

To the Company's knowledge, the Workbook has never been made public or otherwise authorized for public disclosed by the Plaintiff.

29.

In addition to the Workbook, the Plaintiff's Protected Information also includes certain client information created by the Plaintiff and maintained in databases on the Plaintiff's protected computer network and electronic communications system (the "Referral Logs").

30.

The Referral Logs are maintained in limited-access, password-protected databases within the Plaintiff's protected computer network and electronic communications system.

31.

The Protected Information in the Referral Logs includes, without limitation, detailed information regarding current and prospective clients' referral dates, referral sources, physicians' names, contact information, patient numbers, assigned home health care agents, admittance and referral codes, and additional information highly relevant to the Plaintiff's solicitation of and business with that client.

32.

The Protected Information in the Referral Logs includes highly sensitive information regarding certain patient health information, which is among the most sensitive and confidential information currently possessed by the Plaintiff.

33.

Said patient health information has been maintained on the Plaintiff's protected computer network and electronic communications system.

34.

The patient health information in the Referral Logs is further subject to a Health Insurance Portability and Accountability Act Confidentiality Covenant ("HIPAA Covenant") signed by each of the Individual Defendants.

35.

The Protected Information in the Referral Logs is confidential and proprietary, and would be of enormous economic value to the Plaintiff's competitors.

36.

To the Company's knowledge, the Referral Logs have never been made public or otherwise authorized for public disclosed by the Plaintiff.

37.

In addition to the Workbook and Referral Logs, the Protected Information also includes, without limitation, information discussing and recommending business and marketing strategies for the Plaintiff, which was prepared and provided by a third party in exchange for a fee paid by the Plaintiff (the "4DX Information").

38.

The 4DX Information is subject to confidentiality provisions in the Plaintiff's contract with the third party information provider.

39.

To the Company's knowledge, the 4DX Information has never been made public or otherwise authorized for public disclosed by the Plaintiff.

40.

In addition to the Workbook, Referral Logs, and 4DX Information, the Protected Information also includes, without limitation, detailed information regarding all of the Plaintiff's Account Managers and hospitals in the Defendants' geographic area, proprietary training materials regarding regulatory compliance, and other such information used for the Plaintiff's own business purposes.

41.

To the Company's knowledge, no Protected Information has ever been made public or otherwise authorized for public disclosed by the Plaintiff.

**Defendant's Unauthorized Disclosure Of The Plaintiff's
Confidential, Proprietary And Trade Secret Information**

42.

Defendants Cathey, Hogan, and Mack were employed by Amedisys.

43.

On or about April 1, 2011 and while employed by Amedisys, Defendant Hogan was emailed Protected Information by an authorized employee, including, without limitation, the Workbook for her territory.

44.

On or about April 12, 2011 and while employed by Amedisys, Defendant Mack emailed to her own personal email account Protected Information, including, without limitation, the Referral Logs, 4DX Information, detailed information regarding all of the Plaintiff's Account Managers and hospitals in the Defendants' geographic area, and proprietary training materials regarding regulatory compliance.

45.

Upon information and belief, Defendant Cathey has access to the same Protected Information that Defendant Mack emailed to herself on April 12, 2011.

46.

On April 18, 2011, all of the Individual Defendants resigned from their employment with Amedisys, abruptly and without advance notice.

47.

Defendant Hogan printed the Workbook after receiving it on April 1, 2011.

48.

Defendant Hogan did not return the Workbook to the Plaintiff's possession when her employment with Amedisys ended.

49.

Upon information and belief, all of the Individual Defendants are now employed with Interim, in the same or substantially similar positions that they occupied with Amedisys.

50.

Upon information and belief, the Defendants, alone or in concert with others, have misappropriated Protected Information, including without limitation the Workbook, Referral Logs, and 4DX Information, in order to sell or otherwise

profit from the unauthorized distribution and use of said confidential, proprietary and/or trade secret information in their new employment with Interim.

51.

Amedisys has not authorized the Defendants to disclose any of the confidential or proprietary information or trade secrets owned by the Plaintiff, including, without limitation, the information contained in the Protected Information.

## COUNT I

## VIOLATION OF STORED COMMUNICATIONS ACT

### (Defendants Mack and Hogan)

52.

Amedisys repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 51 above.

53.

Upon information and belief, Defendants Mack and Hogan acquired some of the Protected Information, or other information or property owned by the Plaintiff, by intentionally accessing, without the Plaintiff's authority, a protected computer or protected computer network owned by the Plaintiff, through which the Plaintiff provides electronic communication service to its employees and authorized users

throughout the United States and worldwide, and on which the Plaintiff stored the Protected Information and other electronic communications.  Defendants Mack and Hogan wrongfully obtained some of the Protected Information and other electronic communications while said Protected Information and electronic communications were in electronic storage in said system.

54.

Upon information and belief, Defendants Mack and Hogan exceeded any authorization to access the Protected Information.

55.

Defendants Mack and Hogan's actions constitute unlawful access to stored communications and violations of the SCA, 18 U.S.C. § 2701.

56.

Defendants Mack and Hogan engaged in said unlawful access to the Plaintiff's stored Protected Information and other electronic communications with a knowing and intentional state of mind.

57.

Upon information and belief, the conduct by Defendants Mack and Hogan proximately has caused and is causing injury to the Plaintiff and its property, and

the Plaintiff therefore may pursue civil relief against Defendants Mack and Hogan
pursuant to 18 U.S.C. § 2707.

## COUNT II

## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT

### (Defendants Mack and Hogan)

58.

Amedisys repeats, realleges, and incorporates by reference, as if fully set
forth herein, the allegations of paragraphs 1 through 57 above.

59.

Upon information and belief, Defendants Mack and Hogan acquired some of
the Protected Information, or other information or property owned by the Plaintiff,
by intentionally accessing, without the Plaintiff's authority, a protected computer
or protected computer network owned by the Plaintiff, through which the Plaintiff
provides electronic communication service to its employees and authorized users
throughout the United States and worldwide, and on which the Plaintiff stored the
Protected Information and other electronic communications, both temporarily
incidental to the electronic transmission thereof and for purposes of archiving and
backup protection of such information and communications.  Defendants Mack and
Hogan wrongfully obtained some of the Protected Information and other electronic

communications while said Protected Information and electronic communications were in electronic storage in said system.

60.

Upon information and belief, by her foregoing actions, Defendants Mack and Hogan intentionally exceeded any authorized access to the Plaintiff's protected computers, and thereby obtained the Plaintiff's Protected Information and other electronic information stored on the Plaintiff's computers involved in interstate or foreign communication.

61.

Upon information and belief, Defendants Mack and Hogan intentionally exceeded any authorized access to the Plaintiff's protected computers, and by means of such conduct furthered their intended fraud and obtained the Plaintiff's Protected Information and other electronic information, the value of which exceeds $5,000 per annum.

62.

Upon information and belief, by their foregoing actions, Defendants Mack and Hogan intentionally accessed the Plaintiff's protected computers without authorization, and as a result of such conduct, caused and are causing, or recklessly

caused and are causing, damage and loss to the Plaintiff that exceeds $5,000 in value.

63.

The actions of Defendants Mack and Hogan constitute violations of the FCAA, 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5).

64.

Upon information and belief, the conduct of Defendants Mack and Hogan proximately has caused and is causing damage, loss and other injury to the Plaintiff and its property exceeding $5,000 per annum, and the Plaintiff therefore may pursue civil relief against Defendants pursuant to 18 U.S.C. § 1030(g)

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS

### (All Defendants)

65.

Amedisys repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 64 above.

66.

The information contained in the Protected Information derives and derived economic value, both actual and potential, from not being generally known to, and

not being readily ascertainable by proper means by, other persons who can and could obtain economic value from its disclosure or use.

67.

The information contained in the Protected Information is and was the subject of efforts that are reasonable under the circumstances to maintain its secrecy, including without limitation the use of confidentiality agreements, company policies and education, and mechanical, electronic and systematic security methods.

68.

The information contained in the Protected Information constitutes trade secrets within the meaning of O.C.G.A. §§ 10-1-760 et seq..

69.

The Defendants acquired the Plaintiff's trade secrets and knew or had reason to know that the trade secrets were acquired by improper means.

70.

The Defendants used improper means to acquire the Plaintiff's trade secrets and then disclosed or used the Plaintiff's trade secrets without consent.

71.

Upon information and belief, the Defendants disclosed or used the Plaintiff's trade secrets without consent and, at the time of disclosure or use, knew or had reason to know that knowledge of the trade secrets was derived from or through a person who had utilized improper means to acquire said knowledge.

72.

Upon information and belief, the Defendants disclosed or used the Plaintiff's trade secrets without consent and, at the time of disclosure or use, knew or had reason to know that knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

73.

Upon information and belief, the Defendants disclosed or used the Plaintiff's trade secrets without consent and, at the time of disclosure or use, knew or had reason to know that knowledge of the trade secrets was derived from or through a person who owed a duty to the Plaintiff to maintain its secrecy or limit its use.

74.

Defendants' actions constitute misappropriation of trade secrets in violation of the Georgia Trade Secrets Act, O.C.G.A., §§ 10-1-760 et seq.

75.

Defendants' willful, wanton, and malicious misappropriation of the Plaintiff's trade secrets proximately caused and continues to cause the Plaintiff immediate and irreparable harm for which there is no adequate remedy at law, and the Plaintiff is entitled to (1) injunctive relief against Defendants to recover misappropriated trade secrets and to prevent further disclosure and harm, including without limitation a temporary restraining order, and preliminary and permanent injunction; and (2) all damages incurred by the Plaintiff, as determined by the finder of fact, plus punitive damages, court costs, and attorneys' fees.

76.

Defendants are jointly and severally liable.

## **COUNT IV**

## **COMPUTER THEFT AND COMPUTER INVASION OF PRIVACY**

## **UNDER O.C.G.A § 16-9-93**

**(Defendants Mack and Hogan)**

77.

Amedisys repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 76 above.

78.

Upon information and belief, Defendants Mack and Hogan acquired the Plaintiff's confidential, proprietary and trade secret information, or other information or property owned by the Plaintiff, and intended to appropriate said information or property, by use of a computer or computer network owned by the Plaintiff, with knowledge that such use was without the Plaintiff's authority.

79.

Upon information and belief, Defendants Mack and Hogan acquired the Plaintiff's confidential, proprietary and trade secret information, or other information or property owned by the Plaintiff, by use of a computer or computer network owned by the Plaintiff, with the intention of examining medical, patient, sales, financial or other personal data relating to the Plaintiff and/or its customers, with knowledge that such examination is without authority.

80.

Upon information and belief, the conduct of Defendants Mack and Hogan proximately has caused and is causing injury to the Plaintiff and its property, and the Plaintiff therefore may pursue civil relief against Defendants pursuant to O.C.G.A. § 16-9-93(g).

## COUNT V

## BREACH OF FIDUCIARY DUTY/EMPLOYEE DUTY OF LOYALTY

### (Defendants Cathey, Mack and Hogan)

81.

Amedisys repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 80 above.

82.

As employees and agents of the Plaintiff, the Individual Defendants owe the Plaintiff common law duties of loyalty, good faith, and trust, which include, but are not limited to, a duty not to misappropriate and disclose the Plaintiff's trade secrets and patient information.  Moreover, the Individual Defendants had a duty while employed by Plaintiff to act in the Plaintiff's best interest and refrain from engaging in conduct detrimental to the Plaintiff.

83.

Defendants Cathey, Mack and Hogan breached these duties by misappropriating confidential and proprietary information and trade secrets of the Plaintiff and using such information for Interim's business purposes.

84.

The breaches of their fiduciary duty and duty of loyalty by Defendants

Cathey, Mack and Hogan caused the Plaintiff to suffer damages.

## **COUNT VI**

## **TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

### **(All Defendants)**

85.

Amedisys repeats, realleges, and incorporates by reference, as if fully set

forth herein, the allegations of paragraphs 1 through 84 above.

86.

Amedisys has substantial relationships with hospitals, physicians, and

patients in the healthcare industry.

87.

On information and belief, the above-described conduct of the Defendants,

including but not limited to their misappropriation of the Plaintiff's Protected

Information and their unauthorized solicitation of patients using the Plaintiff's

Protected Information, was malicious and improper, was done without privilege,

was done with the intent to injure the Plaintiff, and was done with the attempt to

exploit the Plaintiff for the Defendants' own benefit.

88.

The Defendants' conduct hindered the Plaintiff's business relations in the healthcare industry by utilizing the Plaintiff's proprietary and confidential information to contact and solicit the Plaintiff's clients, utilize the Plaintiff's proprietary and confidential business strategies, and develop relationships with physicians and hospitals within the Defendants' and the Plaintiff's operating territory.

89.

The Defendants' actions demonstrate willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, and demonstrate a specific intent to cause harm to the Plaintiff. The Plaintiff is therefore entitled to recover punitive damages to punish, penalize, or deter the Defendants' actions.

90.

Unless and until the Defendants are enjoined from further tortious acts of interference with the Plaintiff's business relations, the Defendants will continue to engage in the activities described above, thereby causing the Plaintiff irreparable harm and injury for which the Plaintiff has no adequate remedy at law.

91.

As a result of the Defendants' actions, the Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT VII

## TROVER/CONVERSION OF CORPORATE PROPERTY AND ASSETS

### (Defendants Mack and Hogan)

92.

The Plaintiff repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 91 above.

93.

Upon information and belief, Defendants Mack and Hogan converted the Plaintiff's property by the unauthorized assumption and exercise of right of ownership over the Plaintiff's property contrary to the Plaintiff's rights. Defendants Mack and Hogan converted such property for their own use and with the intent to permanently deprive the Plaintiff of its value. Such actions constitute wrongful and illegal conversion or theft under Georgia statutory and common law.

94.

Defendants Mack and Hogan obtained the Plaintiff's property by deceitful means or artful practice with the intent to deprive the Plaintiff of the value of the property, without the Plaintiff's consent.  Such actions constitute wrongful and illegal conversion or theft under Georgia statutory and common law.

95.

The Plaintiff has the legal right to immediate and sole possession of the property.

96.

Conversion of such corporate property and assets of the Plaintiff by Defendants Mack and Hogan proximately caused and continues to cause the Plaintiff damage in an amount to be determined.  The Plaintiff is entitled to (1) injunctive relief against Defendants Mack and Hogan to recover all property converted and prevent further loss; and (2) all damages incurred by the Plaintiff, as determined by the finder of fact, plus profits, court costs, and attorneys' fees.

97.

The actions by Defendants Mack and Hogan demonstrate willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, and

demonstrate a specific intent to cause harm to the Plaintiff.  The Plaintiff is

therefore entitled to recover punitive damages to punish, penalize, or deter

Defendants' actions.

98.

Defendants Mack and Hogan are jointly and severally liable for all such

damages.

## COUNT VIII

## BREACH OF CONTRACT

### (Defendants Mack and Hogan)

The Plaintiff repeats, realleges, and incorporates by reference, as if fully set

forth herein, the allegations of paragraphs 1 through 98 above.

99.

The Plaintiff's Non-Solicitation Agreement is a valid and binding contract

between the Plaintiff and its employees.

100.

Defendants Mack and Hogan breached that contract by failing to return to

the Plaintiff the Protected Information that they possessed when their employment

with the Plaintiff ended.

30

101.

As a result of the breach by Defendants Mack and Hogan, the Plaintiff has been damaged.

**JURY DEMAND**

102.

The Plaintiff respectfully demands a trial by jury on all issues triable to a jury in this action.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Court grant it the following relief:

1. Grant a temporary restraining order enjoining Defendants and persons in active concert or participation with them from:

   (a) using, directly or indirectly through others, trade secret information or other property or patient information taken from or belonging to the Plaintiff;

   (b) disclosing, disseminating or publishing to third persons, directly or indirectly through others, any trade secret information or other property or patient information taken from or belonging to the Plaintiff; and

31

(c)     destroying, discarding or concealing any documents, property, patient information or trade secret information belonging to the Plaintiff during the course of this litigation.

2.     Affirmatively order Defendants to return and turn over to the Plaintiff all originals and copies of any trade secret information and any other corporate documents, property, assets or things of any nature taken from or belonging to the Plaintiff or obtained by Defendants or their employees, agents, or representatives;

3.     Affirmatively order Defendants to certify that all copies of Protected Information belonging to the Plaintiff has been:

(a)     returned or destroyed by Defendants; and

(b)     removed from all computer systems belonging to all Defendants and any other employee of Interim.

4.     Affirmatively order that the Individual Defendants not solicit business on behalf of Interim from patients, prospective patients, healthcare providers, or healthcare facilities of any nature with which they had contact or about which they obtained information while employed by the Plaintiff;

5.     Affirmatively order that Interim will pay to Amedisys:

(a)  the revenues received by Interim from April 18, 2011 to October 16, 2011 from patients who were using Amedisys and changed to Interim after April 18, 2011 and before October 16, 2011;

(b)  the revenues received by Interim from April 18, 2011 to October 18, 2011 from patients who were Amedisys prospects contacted by one of the Individual Defendants before April 18, 2011; and

(c)  reimbursement for legal fees and cost of any notices that will be required and credit monitoring for patients/prospective patients.

6.  Grant the Plaintiff such further interlocutory or permanent injunctive relief as may be appropriate;

7.  Issue a Protective Order limiting the disclosure of patient or trade secret information during the course of discovery and trial of this case and thereafter;

8.  Enter in favor of the Plaintiff and against Defendants a judgment (1) granting temporary injunctive relief and (2) damages in an amount proven by the Plaintiff to have been suffered, including an appropriate award of punitive damages;

33

9.      Award the Plaintiff its attorneys fees, costs and expenses; and

10.     Grant the Plaintiff such other relief as may be necessary and

        appropriate.

Respectfully submitted, this 4th day of May, 2011.


                        KING & SPALDING LLP


                        s/ Michael W. Johnston
                        Michael W. Johnston
                        Ga. Bar No. 396720
                        M. Russell Wofford
                        Ga. Bar No. 773002

                        1180 Peachtree Street, N.E.
                        Atlanta, Georgia 30309-3521
                        Telephone:   (404) 572-4600
                        Facsimile:   (404) 572-5100
                        mjohnston@kslaw.com
                        rwofford@kslaw.com

                        COUNSEL FOR PLAINTIFF
                        AMEDISYS HOLDING, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **AMEDISYS HOLDING, LLC** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. _____** |
| **v.** ) | |
| ) | |
| **INTERIM HEALTHCARE OF** ) | |
| **ATLANTA, INC., DENISE** ) | |
| **CATHEY, BRENDA HOGAN,** ) | |
| **and JENNIFER MACK** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2011, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system.


s/ Michael W. Johnston
Michael W. Johnston